**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jaime BEJAR–MATRECIOS,**
**Defendant-Appellant.**

**No. 79–1444.**

United States Court of Appeals,
Ninth Circuit.

May 1, 1980.
As Amended June 11, 1980.

David S. Teske, Federal Public Defender, Portland, Or., argued for defendant-appellant; Mark E. Griffin, Portland, Or., on the brief.

William Youngman, Asst. U. S. Atty., Portland, Or., argued for plaintiff-appellee; Sidney I. Lezak, U. S. Atty., Peter Robinson, Asst. U. S. Atty., Portland, Or., on the brief.

Before MERRILL, TANG and SCHROE-DER, Circuit Judges.

TANG, Circuit Judge:

Jaime Bejar-Matrecios appeals his conviction for violating 8 U.S.C. § 1326, illegal reentry into the United States after having been previously deported. Bejar challenges a number of rulings made by the district court at his jury trial. Finding two of Bejar's objections to be meritorious, we reverse the judgment of conviction and remand for further proceedings.

## I.

Bejar sought to cross-examine a government witness on whether Immigration Service regulations required that an arrested alien be advised of his right to speak with the consul of the alien's country. The district court sustained the Government's objection to this line of questioning on the ground that it was "a matter of law which the court could instruct." Bejar contends that this restriction on his right of cross-examination was error.

In order to convict a defendant for a violation of § 1326, the prior deportation must have been lawful. *See United States v. Gasca-Kraft,* 522 F.2d 149 (9th Cir. 1975). A violation of 8 C.F.R. 242.2(e), which requires that an arrested alien be advised of his right to speak with the consul of the alien's country, is a ground for attacking the validity of the deportation of the violation prejudiced the defendant. *United States v. Calderon-Medina,* 591 F.2d 529 (9th Cir. 1979); *see United States v. Vega-Mejia,* 611 F.2d 751 (9th Cir. 1979).

Although not wholly clear from the record, it appears that Bejar wished to pur-

sue this line of questioning in order to show that the prior deportation was unlawful. Testimony by the government witness about whether the Service had complied with § 242.2(e) was directly relevant to the issue of the legality of the prior deportation. *Compare United States v. Hernandez-Rojas,* 617 F.2d 533 (9th Cir. 1980). (Evidence concerning non-compliance with agency regulations could not be offered to challenge the fact of the prior deportation when the trial court had previously considered the lack of compliance and ruled it non-prejudicial.) By restricting Bejar's cross-examination in this area, the district court prevented Bejar from making an effective defense of a § 1326 charge.

## II.

█ A second ground exists for reversing Bejar's conviction. A conviction for a violation of § 1326 requires proof, as an essential element of the crime, that the defendant is an alien. 8 U.S.C. § 1326. As a means of proving Bejar's alienage, the Government introduced a certified copy of a judgment and commitment order which showed that Bejar had once pled guilty to a violation of 8 U.S.C. § 1325 (misdemeanor illegal entry). To justify its introduction, the Government argued under a theory of collateral estoppel that the prior judgment was relevant in proving Bejar's alienage, that is, alienage is necessarily established by a conviction for a violation of § 1325. Bejar objected to the admission of the prior judgment, arguing that it was evidence of bad conduct which is not admissible under any theory of evidence.[1] We agree that the district court committed reversible error in admitting the copy of the prior judgment.

█ *A. Relevance.* Under the collateral estoppel doctrine, where a question of fact essential to the judgment is actually litigated and determined by a valid judgment, the determination is conclusive between the same parties in a subsequent action. *E. g. Hernandez v. United States,* 370 F.2d 171 (9th Cir. 1966). The doctrine thus precludes the relitigation of those issues actually decided and necessarily involved in the determination of the prior judgment. *Id.* In two cases, this court has extended the doctrine of collateral estoppel to preclude a defendant in a later criminal proceeding from relitigating facts that were necessarily decided against him during a prior criminal proceeding. *See United States v. Colacurcio,* 514 F.2d 1 (9th Cir. 1975) (facts that were essential to determination of a defendant's guilt at conspiracy trial cannot be relitigated in later trial for income tax evasion); *Pena-Cabanillas v. United States,* 394 F.2d 785 (9th Cir. 1968) (defendant being tried for violation of § 1326 cannot relitigate the fact of alienage that was necessarily determined by conviction for violation of 18 U.S.C. § 911).[2]

In both *Colacurcio* and *Pena-Cabanillas,* the prior convictions were the product of fully litigated trials. The issue presented here is whether a judgment based on a plea of guilty also has collateral estoppel effect.

█ The general rule is that the doctrine of collateral estoppel applies equally whether the previous criminal conviction was based on a jury verdict or a guilty plea. *See Ivers v. United States,* 581 F.2d 1362, 1367 (9th Cir. 1978) (facts necessarily determined by conviction based on guilty plea cannot be relitigated in later forfeiture proceeding); *Brazzell v. Adams,* 493 F.2d 489, 490 (5th Cir. 1974). By his plea of guilty,

---

1. Specifically, Bejar objected on the grounds that the document (1) was irrelevant under Fed.R.Evid. 401–02; (2) if relevant, was prejudicial under Fed.R.Evid. 403; (3) was improper as impeachment under Fed.R.Evid. 609; (4) was improper evidence of a bad act under Fed. R.Evid. 404(b); (5) did not contain an admission of alienage and (6) violated the rule in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

2. Because of its potential implication for a defendant's rights to confrontation and jury trial, other courts have been reluctant to decide whether the doctrine of collateral estoppel is appropriate in successive criminal proceedings. *See United States v. Day,* 591 F.2d 861, 892 n. 23 (D.C.Cir.1979) (Robinson, J., dissenting in part); *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1076 (2d Cir. 1977).

the voluntariness of which Bejar does not challenge, Bejar waived his right to confrontation and a jury trial. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Because a knowing and voluntary guilty plea constitutes an admission of all the material facts alleged in the indictment, *id.*, it is fair to estop a defendant from relitigating a common material fact even at a subsequent criminal proceeding. *Hernandez-Uribe v. United States*, 515 F.2d 20 (8th Cir. 1975), *cert. denied*, 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976). Thus, evidence of a prior conviction, even though founded on a plea of guilty, may be relevant in a subsequent criminal proceeding to establish material facts necessary to sustain the prior judgment. *Id.* In this case, because alienage is an element of a § 1325 conviction, evidence of the § 1325 conviction would have established conclusively that Bejar was an alien at the time of the § 1325 conviction. *See Pena-Cabanillas*, 394 F.2d at 786.

### B. Prejudice

 Even though introduction of the prior judgment may have been relevant, the judgment must be excluded under Fed.R. Evid. 403 if its probative value was outweighed by possible prejudice to the defendant. *See United States v. Pavon*, 561 F.2d 799 (9th Cir. 1977) (even though evidence of past crimes is not prohibited by Fed.R.Evid. 404(b), such evidence should be excluded unless its probative value outweighs any danger of unfair prejudice).[3]

 In this case, we think that introduction of the prior judgment was reversible error. Evidence of a prior conviction that conclusively establishes a material element of a crime would normally be highly probative. The manner in which the Government introduced the copy of Bejar's prior judgment, however, substantially diminished its probative value. The jury was never informed why the exhibit was offered. It was not told that the judgment conclusively established the fact of Bejar's alienage at the time of the § 1325 conviction or even that it tended to prove Bejar's alienage. Moreover, evidence of the prior judgment was cumulative, because the Government had earlier introduced seven documents from Bejar's earlier deportation that would strongly tend to prove that he was an alien.

The possibility of unfair prejudice outweighed what little probative value the evidence of the prior judgment had in this case. Even when evidence of specific prior misconduct is not prohibited by Rule 404(b), it remains potentially prejudicial. This is especially true where the prior act closely resembles the newly charged offense, because a jury is likely to infer that, having once committed a crime, the defendant is likely to do it again. The manner in which evidence of the prior conviction was presented to the jury increased this potential for undue prejudice. The nature of the crime to which Bejar had pleaded guilty was never explained to the jury, and the jury had no way of knowing that it was to show an admission of alienage. Without an explanation about the narrow purpose for which the document was offered, the possibility that the jury accepted it as evidence of criminal predisposition was substantial.

In these circumstances, the admission of the prior judgment was error.

### III.

Since two other issues presented by the parties may recur on remand, we address them briefly for the guidance of the trial court.

 The defendant challenges the admission of the Government's exhibit one, which contained a warrant of deportation with the notation that Bejar had been deported to Mexico. This exhibit is admissible under the "public records" exception to the hearsay rule, Fed.R.Evid. 803(8). *See United States v. Hernandez-Rojas*, 617 F.2d 533 (9th Cir. 1980).

---

**3.** See Note, *Collateral and Equitable Estoppel of Criminal Defendants*, 29 Rutg.L.R. 1221, 1238–39.

Bejar also contends that the district court in its jury instructions, in effect ordered the jury to return a verdict of guilty. The challenged instruction stated that the jury had a "duty to convict" if it believed beyond a reasonable doubt that the defendant was guilty. Taken as a whole, the jury instructions probably did not divest the jury of its power to return a verdict of acquittal and would not have been reversible error. *United States v. Atkinson*, 512 F.2d 1235 (4th Cir. 1975). Instructions to the jury, however, should avoid the use of language that suggests to the jury that it is obliged to return a guilty verdict. *See United States v. Garaway*, 425 F.2d 185 (9th Cir. 1970).

Reversed and remanded.