**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

LUIS ARMANDO HIGUERA-LLAMOS,
Luis aka Luis Llamas, aka
Armando Kaiser,
          *Defendant-Appellant.*

No. 07-10602

D.C. No.
CR-07-00045-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted
January 15, 2009—San Francisco, California

Filed July 31, 2009

Before: J. Clifford Wallace, Jerome Farris and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Lynn T. Hamilton, Hamilton Law Office, Mesa, Arizona for the defendant-appellant.

Diane J. Humetewa, United States Attorney, District of Arizona, John R. Lopez IV, Deputy Appellate Chief and Karen S. McDonald, Assistant United States Attorney, Phoenix, Arizona for the plaintiff-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Higuera-Llamos appeals from his conviction under 8 U.S.C. § 1326 for illegal reentry following deportation and his sentence of thirty months' imprisonment. We have jurisdiction over Higuera-Llamos' timely filed appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

### I.

Higuera-Llamos has previously been removed or deported from the United States on eight separate occasions: July 24, 2002, August 19, 2002, December 16, 2002, December 27, 2002, January 20, 2004, June 8, 2004, June 17, 2004 and November 27, 2006. He was convicted under 8 U.S.C. § 1325, improper entry by an alien, on December 9, 2003 and sentenced to forty-five days' imprisonment. He was convicted under 8 U.S.C. § 1326(a), reentry of a removed alien, on December 20, 2004 and sentenced to eighteen months' imprisonment.

On December 25, 2006, less than one month after Higuera-Llamos' most recent deportation, border patrol agents apprehended Higuera-Llamos in Arizona. Higuera-Llamos admitted to the agents that he was a citizen of Mexico and that he was present in the United States illegally. After Higuera-Llamos was transported to the Yuma Border Patrol Station, he again admitted that he was born in Mexico, that he was previously deported from the United States on November 27, 2006, and that he had entered the United States on December 25, 2006 without proper permission. Higuera-Llamos was charged with attempted reentry after deportation, under 8 U.S.C. § 1326(a), as enhanced by 8 U.S.C. § 1326(b)(1).

At trial, the district court admitted into evidence a Judgment and Commitment from Higuera-Llamos' December 20, 2004 conviction under 8 U.S.C. § 1326(a) for reentry after deportation. The document was redacted and included the following information: the caption of the case, including Higuera-Llamos' name, a statement that the court had adjudicated that Higuera-Llamos was guilty of violating 8 U.S.C. § 1326(a), illegal reentry after deportation, and the district judge's signature. Higuera-Llamos' attorney objected to the admission of this sanitized judgment, arguing that the document was significantly more prejudicial than probative. Higuera-Llamos' attorney contended that testimony by a border patrol agent indicating that Higuera-Llamos had admitted his alienage would be an adequate alternative for the government on the issue. The judge overruled the objection and admitted the judgment. The judge gave a limiting instruction, informing the jury that the judgment could only be considered as to alienage and for no other purpose. The judge reiterated the limiting instruction while instructing the jury at the close of trial. The jury found Higuera-Llamos guilty as charged.

The parties do not dispute that the district court correctly calculated the sentencing range under the United States Sentencing Guidelines to be an advisory sentencing range of 15 to 21 months' imprisonment. Pursuant to 18 U.S.C. § 4A1.3(a)(2)(E), the district court departed upward two levels for prior similar adult criminal conduct not resulting in a criminal conviction. Therefore, Higuera-Llamos was assigned to Criminal History Category VI, resulting in an advisory range of 24 to 30 months' imprisonment. The district court explained its decision to depart upward, reciting Higuera-Llamos' eight prior removals. The court also recounted that Higuera-Llamos had been previously sentenced to forty-five days' imprisonment for violating 8 U.S.C. § 1325 and eighteen months' imprisonment for violating 8 U.S.C. § 1326(a). The court explained that neither of these previous punishments appeared to have deterred Higuera-Llamos from committing the same crime once again. The court concluded

that a higher sentence was therefore necessary to protect the public against Higuera-Llamos' willingness to re-offend. The district court then sentenced Higuera-Llamos to thirty months' imprisonment, to be followed by three years of supervised release. Higuera-Llamos subsequently appealed from both his conviction and sentence.

## II.

Higuera-Llamos argues that the district court abused its discretion in admitting the sanitized Judgment and Commitment related to his previous conviction under 8 U.S.C. § 1326(a). He contends that the prejudicial nature of the judgment substantially outweighed its probative value, and should have been excluded under Rule 403 of the Federal Rules of Evidence.

We review a district court's evidentiary rulings, including its determination that the prejudicial effect of evidence does not outweigh its probative value, for an abuse of discretion. *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004). The district court is to be given "wide latitude" when it balances the prejudicial effect of proffered evidence against its probative value. *United States v. Spencer*, 1 F.3d 742, 744 (9th Cir. 1993), *quoting United States v. Kinslow*, 860 F.2d 963, 968 (9th Cir. 1988). Further, we are to "evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight." *Old Chief v. United States*, 519 U.S. 172, 183 n.6 (1997).

Rule 403 of the Federal Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of . . . needless presentation of cumulative evidence." To determine whether the prejudicial nature of a specific piece of evidence outweighs its probative value, a district court should consider whether the government could

have made the same showing through less prejudicial means. *United States v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007). "The Supreme Court has held that 'what counts as the Rule 403 "probative value" of an item of evidence . . . may be calculated by comparing evidentiary alternatives.' " *Id.*, *quoting Old Chief*, 519 U.S. at 184.

**[1]** In this case, Higuera-Llamos was prosecuted under 8 U.S.C. § 1326(a). That section provides that an alien who unlawfully enters or attempts to enter the United States after he "has been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" is subject to a fine or imprisonment. Alienage is a specific element of this offense, and the government must prove alienage beyond a reasonable doubt. *United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005).

**[2]** We have held that admission of a prior judgment to show alienage, as required to secure a conviction under 8 U.S.C. § 1326(a), may constitute reversible error where no limiting instruction is given and where ample alternatives have been offered to prove alienage. *United States v. Bejar-Matrecios*, 618 F.2d 81, 84 (9th Cir. 1980). In *Bejar-Matrecios*, the district court admitted a certified judgment of the defendant's guilty plea to 8 U.S.C. § 1325, a misdemeanor illegal entry, for the purpose of proving alienage. *Id.* at 83. No limiting instruction was given. *Id.* at 84. We held that there was a substantial possibility that the jury may have mistaken the admission of the guilty plea as evidence of the defendant's criminal disposition. *Id.* Further, the government had introduced seven documents from the defendant's earlier deportation that "would strongly tend to prove that he was an alien." *Id.* The court reasoned that although "[e]vidence of a prior conviction that conclusively establishes a material element of a crime would normally be highly probative," the manner in which the judgment was introduced "substantially diminished its probative value." *Id.*

**[3]** The instant case is clearly distinguishable. First, we examine the probative value of the judgment as tending to prove Higuera-Llamos' alienage. A previous conviction under 8 U.S.C. § 1326(a) establishes that a defendant was an alien at the time of that conviction, and is therefore relevant and highly probative of alienage for the current 8 U.S.C. § 1326 charge. *See Bejar-Matrecios*, 618 F.2d at 84. But Higuera-Llamos' counsel suggested that testimony from border patrol agents who were present at the time Higuera-Llamos was apprehended provided an adequate evidentiary alternative to prove alienage. This testimony recounted Higuera-Llamos' admission that he was a Mexican citizen in the United States illegally. However, in this circuit, a defendant's admission alone is insufficient to prove alienage; it requires independent corroborating evidence to serve as the basis for a conviction. *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997). Thus unlike *Bejar-Matrecios*, the alternative evidence suggested was insufficient as a matter of law to prove alienage conclusively, so the probative value of the judgment admitted was not substantially diminished.

**[4]** Next, we examine the prejudicial nature of the judgment. In this case, the manner in which the judgment was introduced differed substantially from that in *Bejar-Matrecios*. First, the judgment and commitment was redacted so as to eliminate all information regarding sentencing and any other miscellaneous, irrelevant information. Second, when admitting the evidence, the district court informed the jury that the judgment was to be considered only for the limited purpose of proving alienage. Third, while instructing the jury at the close of trial, the district court reiterated that the judgment may only be considered as to the issue of alienage. The district court therefore took adequate precautions in admitting the judgment to reduce its prejudicial nature and to limit any confusion of the jury.

**[5]** Based on this record, we conclude that there was no abuse of discretion. The district court evaluated alternatives

for proving alienage. The only suggestion offered as an alternative to prove alienage, a necessary element of the crime, was Higuera-Llamos' admission of alienage at the time of apprehension and arrest, which would have been insufficient to establish alienage conclusively. The district court took multiple precautions to decrease the prejudicial effect of the judgment. The district court therefore did not abuse its discretion in admitting the judgment and commitment.

## III.

Higuera-Llamos next argues that the district court abused its discretion by increasing his criminal history from Category IV to Category VI based on the district court's finding that his criminal history was underrepresented. We review the sentence imposed by the district court under a deferential abuse of discretion standard. *Gall v. United States*, 128 S. Ct. 586, 591 (2007). We also review the district court's application of the Sentencing Guidelines to the facts for an abuse of discretion. *United States v. Ellsworth*, 456 F.3d 1146, 1149 (9th Cir. 2006).

[6] We recently outlined the framework for sentencing in *United States v. Carty*, 520 F.3d 984, 990-95 (9th Cir. 2008) (en banc). First, the district court must calculate the applicable Guidelines range. *Id.* at 991. The parties should be given the opportunity to argue for a sentence they believe is appropriate. *Id.* Next, the court must consider the factors under 18 U.S.C. § 3553(a), including the sentencing range established by the Guidelines, to determine whether it supports the proposed sentence. *Id.* If the district court determines that a sentence outside of the Guidelines is warranted, it must consider the extent of the deviation and whether the degree of variance is justified. *Id.* at 991-92. The district court must then explain the sentence "sufficiently to permit meaningful appellate review." *Id.* at 992. On appeal, we consider whether the district court committed significant procedural error, and then

evaluate the substantive reasonableness of the sentence, considering the totality of the circumstances. *Id.* at 993.

**[7]** In this case, the district court followed the sentencing process as outlined in *Carty*. First, the district court properly considered the Guidelines when it determined Higuera-Llamos' sentence. *See* 18 U.S.C. § 3553(a)(4). The district court explained its reasons for imposing an upward departure, increasing the criminal history category from category IV to category VI. The Guidelines permit an upward departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." 18 U.S.C. § 4A1.3(a)(1). Information that may form the basis for an upward departure includes "[p]rior similar adult criminal conduct not resulting in a criminal conviction." 18 U.S.C. § 4A1.3(a)(2)(E). Higuera-Llamos had illegally entered or re-entered the country at least six times with no accompanying prosecution at the time of removal. Each of those entries constitutes prior adult criminal conduct not resulting in a conviction, so the district court properly considered this conduct in departing upward.

The district court also rightly considered the relevant sentencing factors described in 18 U.S.C. § 3553(a). *See Carty*, 520 F.3d at 991. Those factors include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed —
>
> > (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)   to afford adequate deterrence to crim-
           inal conduct;

    (C)   to protect the public from further
           crimes of the defendant . . . ;

  (3)   the kinds of sentences available; [and]

  (4)   the kinds of sentence and the sentencing range
      established for—

    (A)   the applicable category of offense
           committed by the applicable category
           of defendant as set forth in the guide-
           lines . . . .

*Id.* at 989.

Here, the judge discussed the history of Higuera-Llamos' repeated immigration violations, including the violations for which Higuera-Llamos did not face criminal charges, and emphasized that he deemed it necessary to increase the sentence to promote respect for the law. He stated that Higuera-Llamos "viewed our criminal laws with contempt and [had] basically made our border a revolving door for coming and going literally at his whim." He pointed out that the previous eighteen-month sentence was insufficient to deter Higuera-Llamos' criminal conduct because he committed the same crime only a month after his previous release and subsequent deportation. The judge stated that he found it necessary to impose a greater sentence to protect the public from Higuera-Llamos' willingness to re-offend.

**[8]** We therefore hold that the district court's decision to increase Higuera-Llamos from a Criminal History Category IV to a Category VI and to sentence him to thirty months' imprisonment was substantively reasonable given Higuera-

Llamos' prior similar conduct, and the failure of prior sentences to deter him from re-offending.

**AFFIRMED.**